426

GENERAL BROADCASTING SYSTEM, Inc.,
v. FEDERAL RADIO COMMISSION
et al.

No. 5196.

Court of Appeals of District of Columbia.
Argued Jan. 6, 1931.
Decided Feb. 2, 1931.

Bethuel M. Webster, Jr., of New York City, and Paul M. Segal, of Washington, D. C., for appellant.

Thad H. Brown, D. M. Patrick, Fanney Neyman, Frank D. Scott, and Spencer Gordon, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice.

This is an appeal from an order of the Federal Radio Commission denying an application made by appellant, the General Broadcasting System, for a renewal of a license to operate its broadcasting station WGBS, located at Astoria, Long Island, on a frequency of 600 kilocycles, with a power output of 500 watts (daytime) and 250 watts (night), sharing time with station WCAC at Storrs, Conn. The appeal is taken under section 16 of the Radio Act of 1927, 44 Stat. 1162, 1169 (47 USCA § 96).

The following broadcasting stations in addition to appellant's are involved in the present controversy, to wit: (1) Station WMCA located at New York City, owned by the Knickerbocker Broadcasting Corporation; (2) station WNYC located at New York City and owned by the municipality; (3) station WICC located at Bridgeport, Conn., owned by the Bridgeport Broadcasting Station, Inc.; and (4) WCAC located at Storrs, Conn., owned by the Connecticut Agricultural College.

It appears that appellant's station WGBS was first licensed to operate in the year 1924, on a frequency of 950 kilocycles, 1 kilowatt power, with no time limit. The license was for three months duration, pursuant to the rule then and since in force. Later the license was changed to a frequency of 860 kilocycles, and in 1928 the station was assigned to a frequency of 1180 kilocycles. The license was afterwards renewed and extended at regular intervals with the latter frequency until in December, 1929, when appellant filed an application requesting the use of the frequency of 600 kilocycles, limited time, with power output of 500 watts (day) and 250 watts (night). Before the foregoing application was heard, appellant filed a concurrent application requesting the use of the frequency 1,400 kilocycles, unlimited time of operation, with 500 watts power output. This application was never heard, and was afterwards withdrawn by appellant.

On December 23, 1929, the commission granted a modification of appellant's license by permitting it to use the frequency of 600 kilocycles, sharing time with station WCAC. The license as thus modified was to expire on January 31, 1930, and subject to the condition that the assignment was experimental in nature and was subject to change if its use developed interference with stations WMCA and WNYC using 570 kilocycles.

In January, 1930, appellant requested a renewal of the license with a frequency of 600 kilocycles. In February, 1930, the commission extended this license permitting the use of 600 kilocycles, until a decision on its renewal application could be reached, but in no event to continue after April 30, 1930. This extension was expressly made subject to such action as the commission might take after hearing the pending application for a renewal of the license, and to the condition that the extension should not constitute or be construed as any finding by the commission that the continued operation of the licensee's station would serve public interest, convenience, or necessity, and also that the

frequency of 600 kilocycles was assigned on a temporary experimental basis and was subject to cancellation without advance notice or hearing.

In the meantime protests were filed with the commission by stations WMCA and WNYC, respectively, against the grant of the frequency of 600 kilocycles to appellant, on the ground that interference might be expected with their stations if such frequency was used by appellant. These stations are both located in New York City at a distance of less than 10 miles from appellant's station WGBS, and were licensed to operate upon a frequency of 570 kilocycles, sharing time thereon. It was claimed by them that a separation of only 30 kilocycles between the frequencies employed by their stations and appellant's would result in serious interference between them. In February, 1930, stations WICC and WMCA severally applied for an assignment of the frequency of 600 kilocycles for their operation.

A hearing was duly held by the commission upon these applications and protests. The controlling question at issue was whether the operation of appellant's station WGBS on a frequency of 600 kilocycles, using 500 watts power, would cause interference with the operation of stations WNYC and WMCA, at New York City, operating upon a frequency of 570 kilocycles, and also using 500 watts power. The commission found upon the evidence that interference in fact would result in such case, and accordingly sustained the protest of stations WNYC and WMCA, and denied appellant's application. At the same time the commission assigned to appellant's station the frequency of 1170 kilocycles (1,180 kilocycles being intended) with 500 watts power, and limited time of operation. The commission granted the application of station WICC for the use of 600 kilocycles with 500 watts power, sharing time with station WCAC, and denied the application of station WMCA for that frequency.

From this decision the present appeal was taken.

 The question at issue is one of fact, which the commission has decided after hearing all of the evidence. The present appeal calls upon this court to determine whether the decision is manifestly against the evidence. If so, it should be reversed; if not, it should be affirmed. Technical Radio Laboratory v. Federal Radio Commission, 59 App. D. C. 125, 36 F.(2d) 111, 66 A. L. R. 1355.

 A review of the record convinces us that the decision is not against the evidence. If appellant's application is granted it will result in locating three broadcasting stations at practically the same geographical position, and permitting them to operate simultaneously with only a 30-kilocycle separation between them. Experience has demonstrated that in general this is not a sufficient separation. The testimony of the radio engineers who were witnesses below, was unanimous to the effect that a 50-kilocycle separation of stations in the same geographic location is the average separation necessary to prevent interference. One of the engineers testified by affidavit: "In my opinion the operation of two five-hundred-watt stations in the same general and highly populated locality, at a frequency difference of as little as 30 kcs., will inevitably result in increased interference and may be taken as establishing a precedent, which if followed in other cases would greatly and harmfully affect the broadcasting service available to listeners throughout the United States." Other competent radio engineers testified to the same effect at the hearing. Moreover, various witnesses, who were interested in the sale and maintenance of radio receiving sets in New York, testified to actual instances of objectionable interference between stations WGBS and WMCA or WNYC when broadcasting simultaneously. This is likewise confirmed by numerous affidavits signed by radio listeners in the vicinity.

Testimony was introduced at the hearing in support of appellant's contention, but in our opinion it cannot be said that the decision of the commission was manifestly against the evidence when the testimony is fully compared and considered.

Various procedural questions are presented by appellant in the record, but they do not affect the substantial issue in the case.

The decision appealed from is accordingly affirmed.